**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | |
|---|---|
| FRIENDS OF DANNY DEVITO, KATHY GREGORY, B&J LAUNDRY, LLC, BLUEBERRY HILL PUBLIC GOLF COURSE & LOUNGE, AND CALEDONIA LAND COMPANY, | : No. 68 MM 2020 |
| Petitioners | : |
| v. | : |
| TOM WOLF, GOVERNOR, AND RACHEL LEVINE, SECRETARY OF PA DEPARTMENT OF HEALTH, | : |
| Respondents | : |

*CONCURRING AND DISSENTING OPINION*

**CHIEF JUSTICE SAYLOR**                                        **Decided: April 13, 2020**

Respectfully, I would refrain from exercising discretion to grant King's Bench jurisdiction, albeit I agree with the majority that the circumstances are extraordinary and matters of great public importance are involved. I find, however, that several material aspects of the petitioners' claims may involve issues of disputed fact. And it also appears to me that some of the majority's conclusions have mixed legal and factual overtones.

For these reasons -- and in light of the ongoing public health crisis -- I believe there is much to be said for treating the executive branch's actions as presumptively

valid for now, while not foreclosing colorable challenges from moving forward in the appropriate court of original jurisdiction, *i.e.*, the Commonwealth Court. Importantly, that court, unlike this one, is organized to support orderly fact-finding. Thus, it can more appropriately administer the necessary judicial consideration in the first instance, subject to appellate review by this Court if necessary.

That said, since the merits are now being explored, I lend my support to the majority's conclusion that the present public-health crisis may properly be regarded as a "disaster emergency," triggering the Governor's special powers to respond. *See* Majority Opinion, *slip op.* at 23-26 (citing 35 Pa.C.S. §7102). While there are factual aspects attending the majority's reasoning on this point, I believe judicial notice can appropriately be taken concerning the severity of the current emergency and the need for strong countermeasures.

I am less confident, however, in the majority's conclusion that "summary administrative action" by the executive branch to close many businesses throughout the Commonwealth must evade judicial review as a check against arbitrariness. Majority Opinion, *slip op.* at 42. While the majority repeatedly stresses that such closure is temporary, *see id.*, this may in fact not be so for businesses that are unable to endure the associated revenue losses. Additionally, the damage to surviving businesses may be vast. Significantly, moreover, the Supreme Court of the United States has admonished that the impermanent nature of a restriction "should not be given exclusive significance one way or the other" in determining whether it is a proper exercise of police power. *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 337, 122 S. Ct. 1465, 1486 (2002).

The majority opines that "[t]he protection of the lives and health of millions of Pennsylvania residents is the sine qua non of a proper exercise of police power." *Id.* at

I believe, however, that greater account must be given to the specific nature of the exercise, and that arbitrariness cannot be tolerated, particularly when the livelihoods of citizens are being impaired to the degree presently asserted.

To me, the majority allocates too much weight to temporariness to defeat developed allegations of a lack of due process in the executive branch's determination of which businesses must close and which must remain closed.  *See* Majority Opinion, *slip op.* at 37-38.[1]  Again, there seems to be a factual dynamic that should not be dismissed out of hand.  Certainly, the executive branch may engage in *proper* exercises of police power in a disaster emergency, and a fair amount of deference to its decisions may be in order.  At least short of martial law, however -- relative to the broad-scale closure of Pennsylvania business for a prolonged period -- I don't believe the executive's determinations of propriety can go untested in the face of the present allegations of inconsistency and irrationality.[2]

In summary, in my considered judgment, the matters raised in the emergency application for extraordinary relief -- especially those related to alleged inconsistency

---

[1] Such allegations include the following:

> It is not clear why some businesses are on the life-sustaining list[.]  For example, why are "beer, wine, and liquor stores," determined to be non-life-sustaining, but "beer distributors" are determined to be "life-sustaining?"  Why are "department stores" non-life-sustaining, but "other general merchandise stores" life-sustaining?

Brief for Petitioners at 48 (footnote omitted).

[2] The majority observes that the General Assembly has the ability to terminate the Governor's order.  *See* Majority Opinion, *slip op.* at 37 (citing 35 Pa.C.S. §7301(c)).  Although I agree with the majority that this serves as one check on executive power, I note that the Constitution serves as another.

and arbitrariness in the waiver process -- should be left to the Commonwealth Court, in the first instance, as the court of original jurisdiction invested with fact-finding capabilities.

Justices Dougherty and Mundy join this concurring and dissenting opinion.